[No. 2147]

STATE OF NEVADA, Ex Rel. H. B. MAXSON, Petitioner, *v.* GEORGE BRODIGAN, as Secretary of State of the State of Nevada, and RICHARD A. McKAY, Respondents.

[143 Pac. 306]

1. Elections—Primary Election—Expenses—Account—Duty to File—Statutes—"Candidate."

Primary election law (Stats. 1913, c. 282), sec. 8, provides that every candidate for nomination or election to a state office shall, five days before and fifteen days after the election at which he was a candidate, file with the secretary of state a sworn statement setting forth all the moneys contributed by him to aid his nomination or election. Late in the last day for filing nomination papers M. and G. each filed his nomination paper for the Republican nomination for attorney-general and paid the filing fee. On the second day thereafter G. filed with the secretary of state his purported withdrawal from the nomination. About half an hour later M. filed his purported withdrawal, which it was held could not be accepted, because on G.'s withdrawal M. became the Republican nominee by operation of law. *Held* that, under such circumstances, M. was not a candidate for the nomination for the office at a primary election, and his failure to file a statement of his primary election expenses was no objection to his right to have his name printed on the ballot.

2. Penalties—Forfeitures.

Penalties and forfeitures are not favored, and will not be imposed unless the statute so clearly directs.

Original proceeding. Petition by the State, on relation of H. B. Maxson, for a writ of prohibition against George Brodigan, Secretary of State, and Richard A. McKay. **Writ denied.**

*Cole L. Harwood* and *H. V. Morehouse,* for Petitioner.

*Geo. B. Thatcher,* Attorney-General, and *Prince A. Hawkins,* for Respondent Brodigan.

*Richard A. McKay, in pro. per.*

By the Court, Talbot, C. J.:

Relator asks for a writ of prohibition restraining the secretary of state from certifying or causing to be placed or printed the name of respondent McKay upon the official ballot as the nominee of the Republican party for

attorney-general at the ensuing election to be held on November 3, because of his failure to file a statement of his campaign expenses under the law relating to the purity of elections passed at the last session of the legislature.

Late in the day or night of Saturday, August 1, 1914, which was the last day for filing nomination papers; McKay and Raymond A. Gott each filed his nomination paper for the Republican nomination for the office of attorney-general, and paid the filing fee of $100. On the following Monday, August 3, Gott filed with the secretary of state his purported withdrawal from the nomination, and about half an hour later McKay filed with the secretary of state his purported withdrawal from the nomination. Acting pursuant to the order of this court, the secretary of state, on August 9, accepted the withdrawal of Gott, and refused to accept the purported withdrawal of McKay.

In our decision in the proceeding which resulted in that order, we said:

"In the case at bar, as we view it, there was nothing in the law which would prevent the first party applying to withdraw from having his application complied with. In other words, Raymond A. Gott, having applied to the secretary of state to have his name withdrawn, could, in our judgment, properly have that request complied with. As soon, however, as his name was withdrawn, the other party to the contest for Republican nomination—namely, Richard A. McKay—became, by operation of the law (subdivision 9, c. 14), the party nominee for the office of attorney-general, and, having become the party nominee, under the statute, and under the rule as laid down by this court in the case of *Donnelley* v. *Hamilton,* 33 Nev. 418, 111 Pac. 1026; he could not withdraw." (*State, ex rel. Thatcher,* v. *Brodigan,* 37 Nev. 458, 142 Pac. 522.)

Upon the argument yesterday afternoon a number of questions were presented, of which it is necessary to determine only the one, as to whether McKay was required to file a statement five days before and fifteen days after

the primary election. He has appeared and asserted before this court that, acting in good faith, he failed to file a statement of campaign expenses incurred by him because, under his belief, no such statement was required by the law. Section 8 provides:

"Every candidate for nomination or election to public office, including candidates for the office of senator of the United States, and representatives in Congress, shall, five days before and fifteen days after the election at which he was a candidate, file with the secretary of state, if a candidate for senator of the United States, representative in Congress, or for any state or district office in a district composed of one or more counties, and with the county clerk, if a candidate for state senator, or assemblyman, or for county and precinct offices, and with the city clerk if for a city office, an itemized sworn statement setting forth in detail all the moneys, or other valuable thing contributed, expended or promised by him to aid and promote his nomination or election, or both, as the case may be."

Section 35 provides:

"The name of a candidate chosen at a primary nominating election or otherwise, shall not be printed on the official ballot for the ensuing election unless there has been filed by or on behalf of said candidate the statements of accounts and expenses relating to nominations required by this act."

Under the well-settled rule that penalties and forfeitures are not favored unless clearly expressed, it is apparent that he should not be deprived of his nomination or that his name should not be withheld from the ballot unless the statute clearly directs that such should be the result. At least from the time that Gott and McKay filed their nomination papers, on August 1, to the time Gott withdrew, they were both candidates for the nomination, but upon the withdrawal of Gott, under the statute and the decision of this court, McKay became the Republican nominee to be placed on the ballot for the general election. As such nominee, with no one opposing him, he

was not a candidate for the nomination at the primary election, after the withdrawal of Gott. Consequently, McKay was not a candidate for the nomination at the time the names of candidates for the nomination were certified and printed on the primary election ballot, and his name did not appear thereon. He was not a candidate for the nomination at the time of the primary election, nor five days before nor fifteen days after such election. Therefore we conclude that, under the language of the statute providing that "every candidate for nomination or election to public office * * * shall, five days before and fifteen days after the election at which he is a candidate," file a statement, McKay, not being a candidate for the nomination at those times, and having no contest or interest in the primary election, was not required to file a statement, either five days before or fifteen days after the primary election.

While not a candidate for nomination at those times, if it be conceded that he will be required to file a statement five days before and fifteen days after the general election at which he is a candidate, it does not follow that he is required to file such statement five days before or fifteen days after the primary election, when at the times required for filing statements before and after the primary election by candidates for the nomination at the primary election he was not a candidate for the nomination.

The application for the writ is denied.

MCCARRAN, J.: I concur.

NORCROSS, J., concurring:

I concur in the order and in the construction placed by the chief justice on sections 8 and 35 of chapter 282 of the Statutes of 1913.